[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13311

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ORESTES HERNANDEZ,
a.k.a. John Doe 2,
a.k.a. Cuco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:96-cr-00443-JEM-4

_____

Before ROSENBAUM, NEWSOM, and LUCK, Circuit Judges.

NEWSOM, Circuit Judge:

This case presents an interesting question of statutory interpretation that has divided our sister circuits. Section 403(a) of the First Step Act of 2018 prohibits district courts from engaging in one particular form of (what some have called) sentence "stacking." Specifically, and as relevant here, under § 403(a), if a defendant is charged in the same indictment with multiple counts of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), and he doesn't have a previous § 924(c) conviction that has become final, the second and ensuing counts will carry only 5-year consecutive mandatory sentences, rather than the much higher consecutive mandatories that would have attached under preexisting law. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22. Significantly for our purposes, § 403(b) then provides that § 403(a)'s modified stacking rule applies to pre-Act convictions—but only "if a sentence for the offense has not been imposed as of [the] date of enactment." *Id.* § 403(b). We must decide whether a criminal sentence that was pronounced before the First Step Act's effective date but thereafter vacated counts as "a sentence" that "has … been imposed" within the meaning of § 403(b)—in essence, whether § 403(b) refers to the historical fact of a sentence's imposition, in which case the answer to the question as we've framed it is yes, or to the legal effect of that sentence, in which case the answer is no. *Compare, e.g., United*

*States v. Duffey*, 92 F.4th 304, 309 (5th Cir. 2024) (yes), *cert. granted*, ___ U.S. ___, ___ S. Ct. ___, 2024 WL 3259688 (U.S. July 2, 2024), *and United States v. Jackson*, 995 F.3d 522, 525–26 (6th Cir. 2021) (yes), *with, e.g.*, *United States v. Mitchell*, 38 F.4th 382, 389 (3d Cir. 2022) (no), *and United States v. Merrell*, 37 F.4th 571, 577 (9th Cir. 2022) (no).

We hold that § 403(b)'s text and context make clear that a sentence that was pronounced pre-Act but thereafter vacated *does* qualify as "a sentence" that "has … been imposed" for § 403(b) purposes. If that's not the result that Congress intended, it is of course free to amend the statute. We are not.

## I

Way back in 1998, Orestes Hernandez was convicted of participating in a series of violent crimes—in particular, (1) several robbery- and extortion-related Hobbs Act offenses, (2) multiple carjacking offenses, and, as relevant here, (3) three violations of 18 U.S.C. § 924(c), which prohibits using or carrying a firearm "during and in relation to any crime of violence." Hernandez was originally sentenced for his crimes in 1999, and then, following an appeal, was resentenced in 2002.

Nearly two decades later, Hernandez filed a motion under 28 U.S.C. § 2255 challenging his § 924(c) convictions on the ground that under the Supreme Court's intervening decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 588 U.S. 445 (2019), his attempted-robbery charge no longer qualified as a predicate "crime of violence" for § 924(c) purposes. In an order

entered in 2021, the district court vacated one of Hernandez's
§ 924(c) convictions and ordered him resentenced. That resentenc-
ing occurred in 2022.

At resentencing, the court had to grapple with whether the
First Step Act, which Congress had passed in 2018, affected Her-
nandez's sentencing calculus. At the time that Hernandez commit-
ted his crimes in 1995 and 1996, at the time he was convicted of
those offenses in 1998, at the time he was originally sentenced for
them in 1999, and at the time of his initial resentencing in 2002,
separate § 924(c) counts charged in the same indictment could be
"stacked" in a particular way, leading to dramatically increased pen-
alties for any "second or subsequent conviction." *See* 18 U.S.C.
§ 924(c)(1) (1996). Under that regime, Hernandez would face a 5-
year sentence for his first § 924(c) violation and a consecutive 20-
year sentence for the second. *See id.* Hernandez argued, however,
that § 403(b) of the newly passed First Step Act prohibited that sort
of stacking of § 924(c) violations arising out of a single indictment
and, accordingly, that he was subject only to much lower 5-year
terms on each § 924(c) count. The district court rejected Hernan-
dez's contention that he was entitled to the benefit of the First Step
Act's modified stacking rule.

This is Hernandez's appeal. The question before us is
whether § 403(a) applies to Hernandez's case. And the answer to
that question, in turn, depends on the meaning of § 403(b), which,
again, makes § 403(a) applicable to pre-Act convictions provided
that "a sentence for the offense has not been imposed as of such

date of enactment." First Step Act of 2018, Pub. L. No. 115-391, § 403(b). We must decide whether a sentence that was pronounced before the First Step Act's passage—as Hernandez's was, whether we consider 1999 or 2002 as the operative date—but was thereafter vacated—as Hernandez's was in 2021—constitutes "a sentence" that "has … been imposed" within the meaning of § 403(b). Hernandez insists that it doesn't and, therefore, that § 403(a)'s modified stacking rule applies to his case.

Following the First-Step Act's adoption, the government initially disagreed with other petitioners advancing Hernandez's position. It contended, to the contrary, that a sentence that was initially pronounced before the Act's passage, even if later vacated, counts as "a sentence" that "has … been imposed" for § 403(b) purposes. But the government later reversed course, filed a confession of error in Hernandez's case, and adopted his interpretation. Hernandez and the government now jointly ask us to remand to the district court for application of § 403(a) to Hernandez's second § 924(c) count. We appointed Paul M. Cozzi as amicus curiae to defend the district court's judgment. He has ably discharged his responsibilities.

## II

We start with the relevant statutory provisions. First, § 403(a)'s modified stacking rule:

Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking "second or subsequent conviction under this

subsection'' and inserting "violation of this subsec-
tion that occurs after a prior conviction under this
subsection has become final".

Pub. L. No. 115-391, § 403(a). In plain English—and no one dis-
putes this—§ 403(a) changes the rules to (in many cases) ameliorate
the effects of stacking multiple § 924(c) sentences arising out of the
same indictment. Here, all agree that Hernandez's two remaining
§ 924(c) offenses were in fact charged in the same indictment. Ac-
cordingly, if § 403(a) applies to his case, then Hernandez is entitled
to a resentencing. If it doesn't, then he's not. The real question,
therefore, is whether § 403(a) applies. And the answer to *that* ques-
tion depends on the proper interpretation of § 403(b).

        In § 403(b), Congress specified § 403(a)'s "APPLICABILITY TO
PENDING CASES" as follows:

        This section, and the amendments made by this sec-
        tion, shall apply to any offense that was committed
        before the date of enactment of this Act, if a sentence
        for the offense has not been imposed as of such date
        of enactment.

*Id.* § 403(b). So again, in plain English, § 403(a)'s modified stacking
rule applies to pre-Act convictions like Hernandez's—but only, the
statute says, "if a sentence for the offense has not been imposed as
of [the] date of enactment." Given § 403(b)'s language, the dispos-
itive question is this: Does Hernandez's initial sentence, which a
district court pronounced before the First Step Act's passage in
2018 but thereafter vacated in 2021, qualify as "a sentence" that

"has … been imposed" within the meaning of § 403(b)?  For reasons we will explain, we hold that it does—and, therefore, that Hernandez is not entitled to the benefit of § 403(a)'s new stacking rule.

### A

As in all statutory-interpretation cases, our duty is to discern § 403(b)'s ordinary meaning.  *See United States v. Pate*, 84 F.4th 1196, 1201 (11th Cir. 2023) (en banc) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021)).  Our job, therefore, is to inquire "how a reasonable person, conversant with the relevant social and linguistic conventions, would read the text in context."  *Id.* (quoting John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2392–93 (2003)).  Here, we must determine whether a sentence that was pronounced before the First Step Act's passage but was thereafter vacated qualifies as "a sentence" that "has … been imposed" for § 403(b) purposes.  Three textual clues lead us to conclude that it does.

### 1

We begin with the word "sentence."  In its reply brief, the government cites *Black's Law Dictionary*:  A "sentence" is "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty." *Black's Law Dictionary* 1636 (11th ed. 2019).  That explanation, we agree, accurately captures the ordinary meaning, but in our view it tends to undermine Hernandez and the government's interpretation and to confirm the amicus's.  The *Black's* definition fits Hernandez's original sentence to a T:  That *was* the

"judgment" that the district court "pronounc[ed]" upon "finding [Hernandez] guilty."

Had Congress wanted to specify the sorts of "sentence[s]" to which § 403(b) applies or otherwise limit that term's reach, it could have done so in any number of ways—for instance, by referring to "a *final* sentence" or "a *valid* sentence," or perhaps even to "*the* sentence." Conspicuously, it did none of those things. To the contrary, Congress did just the opposite, introducing the term "sentence" with the indefinite article "a." Usage guides confirm what we all know—that the indefinite "a" points "to a nonspecific object, thing, or person that is not distinguished from the other members of a class." Bryan A. Garner, *Garner's Modern English Usage* 991 (4th ed. 2016). Indeed, we've gone so far as to say that the term "a" denotes "any." *United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015). At the very least, we think, Congress's use of the indefinite "a" indicates that § 403(b) covers any type of "sentence" that "has … been imposed" for an offense—even one, we agree with then-Judge Barrett, "that was subsequently vacated." *United States v. Uriarte*, 975 F.3d 596, 608 (7th Cir. 2020) (Barrett, J., dissenting).[1]

---

[1] To be clear, *United States v. Burke*, 863 F.3d 1355 (11th Cir. 2017), on which our dissenting colleague relies so heavily, is not to the contrary. *See* Dissenting Op. at 1, 7–8. The panel there didn't purport to define the term "sentence" for all times and all purposes. Rather, and more subtly, it pointed to the relevant text, guidelines commentary, and precedent to hold that as used in U.S.S.G. § 4A1.2(a), a "sentence" is a judgment that retains continuing validity. *See id.* at 1359. But, of course, the *whole point* of today's decision is that § 403(b)'s own

**2**

Next up, "has not been."  For reasons we'll explain, in the context of § 403(b), that phrase is best read to refer to a completed act.  All agree that the phrase "has not been" is framed in the present-perfect tense, meaning that, as a general matter, it could "denote[] an act, state, or condition" that *either* "is now completed *or* continues up to the present."  *The Chicago Manual of Style* § 5.132 (17th ed. 2017) (emphasis added).  Here, though, Hernandez and the government resist the usual rule that the present-perfect tense can convey either meaning.  They instead insist that Congress's use of the phrase "has not been" rather than "*had* not been" in § 403(b) indicates that it meant to refer to a sentence that "continues up to the present"—*i.e.*, one that has continuing validity.  *See, e.g.*, Reply Br. of the United States at 6.

We disagree.  As in all interpretive enterprises, "context is king."  *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006).  And here, the remainder of the relevant sentence sheds light on the present-perfect use of "has not been" and indicates that, in § 403(b), that phrase is better understood to point to a completed act than to a continuing one.  Recall that § 403(b) refers to "a sentence" that "has not been imposed *as of [the First Step Act's]*

---

unique text and context—in particular, the juxtaposition of the term "sentence" alongside the phrase "has not been" and the term "imposed"—indicate a different, historical-fact understanding.  With respect, there is nothing "halfhearted," Dissenting Op. at 10, about our explanation of the distinctions between *Burke* and this case.  That explanation comprises our entire opinion.

*date of enactment.*" Pub. L. No. 115-391, § 403(b) (emphasis added). Because Congress was creating law "in real-time," so to speak, § 403(b)'s use of the phrase "as of [the] date of enactment" means, in effect, "as of *today*."

That understanding, we think, has two important implications. First, it undermines Hernandez and the government's contention that if Congress had meant to refer to a completed act it would have used the word "had" rather than "has"—and hence the phrase "had not been" rather than "has not been." That substitution would have made a syntactical hash of § 403(b), which then would have extended § 403(a)'s modified stacking rule to pre-Act convictions provided (with our "as of today" paraphrase) that "a sentence for the offense *had* not been imposed as of [today]." Put simply, that makes no sense—no one talks that way. So, as an initial matter, Congress's choice of "has" over "had" doesn't have the talismanic significance that Hernandez and the government seem to assume.

Second, Congress's decision to identify a sentence's "impos[ition]" by reference to a specific point in time—namely, to the First Step Act's "date of enactment"—indicates that the phrase "has not been" is best understood to refer to a completed act, not an ongoing one. The construction pressed by Hernandez and the government envisions that a criminal sentence can pass into and out of existence. On that view, the target is always moving—and always capable of evanescing. But that's tough to square with the concrete, point-in-time benchmark denoted by § 403(b)'s "date of

enactment" language, in that it provides no way of knowing in real time, as of the "date of enactment," whether or not "a sentence has … been imposed."

### 3

Finally, the operative verb: "imposed." As this Court has already recognized, when used in reference to a criminal sentence, the term "imposed" in § 403(b) refers to the historical fact of *pronouncement*. In *United States v. Smith*, we reiterated that "[o]ur precedent dictates that a sentence is 'imposed,' somewhat unsurprisingly, when the district court imposes it." 967 F.3d 1196, 1212 (11th Cir. 2020). More specifically, and more helpfully, we went on to explain that "a sentence is 'imposed' for the purposes of § 403(b) when it is pronounced by the district court." *Id.* at 1213; *accord, e.g.*, *Young v. United States*, 943 F.3d 460, 463 (D.C. Cir. 2019) ("[I]n ordinary usage a sentence is 'imposed' when a district court pronounces it."); *cf.* 18 U.S.C. § 3553 (titled "Imposition of a sentence" and stating that "[t]he court, in determining the particular sentence to be imposed, shall consider" specific factors).[2] And as already

---

[2] It's true, as the government and our dissenting colleague both note, that *Smith*'s procedural posture was a little different—there, the question was whether a sentence that remained pending on appeal could be deemed to have been "imposed." *Smith*, 967 F.3d at 1210–11. But nothing about that difference alters or undermines the *Smith* court's ordinary-meaning explanation that a sentence is "imposed" when the district court "pronounces" it in open court. *See, e.g.*, Webster's Third New International Dictionary 1136 (1961) (defining "impose," in relevant part, to mean "to inflict"); Oxford English Dictionary (online ed.) (defining "impose" to mean "[t]o lay on, as something to

explained, pegging a sentence's "impos[ition]" to the act of pronouncement comports with ordinary legal usage. *See supra* at 7.

Needless to say, the pronouncement of a sentence is something that occurs at a particular point in time and space: A district judge enters a courtroom, faces the defendant and his lawyer, and orally delivers remarks that constitute the criminal sentence.[3]  That oral pronouncement—the "impos[ition]"—is a historical fact.  For better or worse, it *happened*, and nothing—not even the sentence's later vacatur—can erase the historical record.  *Cf. Uriarte*, 975 F.3d at 607 (Barrett, J., dissenting) ("[I]t is perfectly coherent to describe the procedural posture of a case by saying, 'a sentence was imposed last year, but it has since been vacated on appeal.'").[4]

---

be borne, or submitted to; to inflict (something) on or upon; [and] to levy or enforce authoritatively or arbitrarily").

[3] Tellingly, we think, our precedent privileges the oral pronouncement of a sentence as the operative act.  In the event of a discrepancy between the oral pronouncement and the written judgment memorializing a sentence, the former controls.  *See, e.g., United States v. Khoury*, 901 F.2d 975, 977 (11th Cir. 1990).

[4] Disagreeing with Justice Barrett, our dissenting colleague asserts that one wouldn't refer to a sentence as having been "imposed" if it was later vacated "any more than we would say a touchdown has been scored if the referee calls it back because of a penalty."  Dissenting Op. at 2.  In response, we offer the following representative instances in which ordinary people say, well, *exactly that*—both orally and in writing.  *See, e.g.,* Jack Baer, *Bills Defeat Chiefs After Penalty Negates Go-Ahead Chiefs Touchdown*, Yahoo Sports (Dec. 11, 2023), https://sports.yahoo.com/bills-defeat-chiefs-penalty-refs-go-ahead-touchdown-010958995.html ("For a moment on Sunday, the Kansas City Chiefs had

⋆   ⋆   ⋆

To sum up, several textual and contextual considerations strongly indicate that when § 403(b) refers to "a sentence" that "has … been imposed," it means an actual, historical, in-time-and-space sentence, not necessarily a sentence that retains continuing legal validity. Those considerations include (1) the ordinary meaning of the term "sentence," particularly where, as here, it is introduced by the indefinite article "a"; (2) the use of the present-perfect phrase "has … been imposed" in conjunction with the phrase "as of [the] date of enactment"; and (3) this Court's previous explanation that a sentence is "imposed" for § 403(b) purposes when it is pronounced.

**B**

Before we conclude, we should address what we take to be the strongest counterargument—one that neither Hernandez nor the government has expressly pressed but that several of our sister circuits have accepted and our dissenting colleague embraces. *See* Dissenting Op. *passim*. Vacatur, the argument goes, "wipes the slate clean" and, therefore, § 403(b) doesn't consider a since-vacated

---

a go-ahead score for the ages in a critical AFC matchup against the Buffalo Bills. But a critical penalty wiped it out …."); *Purdue Pick Six Gets Called Back After Returner High Steps Into the Endzone*, YouTube (Nov. 19, 2022), https://www.youtube.com/watch?v=DTLUnlY1dAI ("Touchdown Purdue! Interception for a touchdown . . . [but] they might call this back.").

pre-Act sentence as having been "imposed," at least in any way that the law should respect.

The strongest articulation of this strongest counterargument was provided by Judge Bibas in a case presenting the same interpretive question that we face here. *See Mitchell*, 38 F.4th at 392 (Bibas, J., concurring). Judge Bibas acknowledged that he was initially persuaded that "as a *historical* matter, a sentence was imposed" within the meaning of § 403(b) and, accordingly, that § 403(a) didn't apply. *Id.* But, he said, "a closer look at the nature of vacatur changed [his] mind." *Id.* Because the law frequently treats vacatur as "mak[ing] a sentence void from the start," and because "Congress legislates against background legal principles," Judge Bibas ultimately concluded that the legal validity, rather than historical imposition, was the interpretive lodestar. *Id.* Relying on similar reasoning, several circuit courts have come to the same conclusion. *See id.* at 388 ("[A] vacatur 'cancels' the previous sentence."); *Merrell*, 37 F.4th at 576 ("[W]e cannot conclude that the term 'a sentence' in § 403(b) refers to a vacated sentence, something that the existing law treats as null and void."); *Uriarte*, 975 F.3d at 602 ("When Congress crafted this statutory language, it well understood that vacating a sentence 'wipe[s] the slate clean.'") (brackets in original and citation omitted)).

Respectfully, we disagree. As an initial matter, and most obviously, we are bound by our decision in *Smith*—which, as already explained, held that, as a plain-language matter, a sentence is "imposed" within the meaning of § 403(b) when it is "pronounced" in

open court.  *See* 967 F.3d at 1212–13.  *Smith*, we think, requires a historical-fact understanding of "impos[ition]," rather than a continuing-legal-effect understanding.

Moreover, and in any event, although the "wipes the slate clean" argument is by no means insubstantial, it ultimately fails, in our view, for two related reasons.  First, like the interpretive canons, "background principles," no matter how well established, can't control or contradict clear statutory text.  *Cf. Uriarte*, 975 F.3d at 609 (Barrett, J., dissenting) ("[A] background principle cannot overcome statutory text.").  Second, and separately, it's not clear that there *is* a universal "background principle" that vacatur necessarily "wipe[s] the slate clean."  One federal statute, for instance, requires a court resentencing a defendant following vacatur of his original sentence and a remand to use the sentencing guidelines in effect on the date of the original (*i.e.*, vacated) sentence.  *See* 18 U.S.C. § 3742(g)(1).  So too, in interpreting a federal law prohibiting most felons from "receiv[ing]" firearms, we held that the only thing that mattered was that the defendant was under a judgment of conviction at the time of receipt, and that it was "not enough" for him to demonstrate that he later "secure[d] an order … vacating the predicate offense."  *United States v. Cabrera*, 786 F.2d 1097, 1098 (11th Cir. 1986) (per curiam).

In the end, the "wipes the slate clean" theory simply can't overcome the clear textual and contextual indications that § 403(b)'s reference to "a sentence" that "has … been imposed"

denotes a sentence that was pronounced as a matter of historical fact, not one that necessarily remains valid as a matter of law.

★   ★   ★

One last thing:  However tempting it may be to indulge what we might take to be the First Step Act's underlying "purposes"—compassion, leniency, etc.—we've said many times that "[e]levating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc).  Moreover, and in any event, as we recently reaffirmed en banc, "to the extent a statute's purpose is relevant, the best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *Pate*, 84 F.4th at 1206 (quotation marks omitted and alterations adopted).  Just so here.[5]

Because the district court pronounced a sentence for Hernandez before 2018, "a sentence" was "imposed as of [the] date of [the First Step Act's] enactment" within the meaning of § 403(b).

---

[5] Our dissenting colleague mines congressional purpose from some notoriously iffy sources—most notably, from representations made (1) by individual legislators (2) in an *amicus* brief (3) filed in *another* case and (4) in *another* court. *See* Dissenting Op. at 14 n.2.  *But see Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 132 (1974) (observing that statements of legislators in amicus briefs "'represent only the personal views of th[o]se legislators, since the statements were [made] after passage of the Act'").

And that means, in turn, that § 403(a)'s modified stacking rule doesn't apply to Hernandez's case. Accordingly, we affirm.

**AFFIRMED.**

ROSENBAUM, Circuit Judge, Dissenting:

Sentence vacatur happens. When it does, we have been very clear about any effect the original sentence might have: zero, zilch, nada. We've said, for instance, that a vacated sentence "becomes void in its entirety." *United States v. Burke*, 863 F.3d 1355, 1359 (11th Cir. 2017) (citation and quotation marks omitted). And if that's not clear enough, we've explained that, "[a]fter vacatur, the original sentencing has no validity or effect. The vacated sentence . . . is wholly nullified and the slate is wiped clean." *Id.* (cleaned up). Indeed, we've noted that "a district court conducts a resentencing as if no initial sentencing ever occurred." *Id.* In other words, as far as the law recognizes, upon sentence vacatur, no sentence has ever been imposed. And Congress knows the law treats vacated sentences "as null and void." *Merrell*, 37 F.4th 571, 576 (9th Cir. 2022).

Under § 403(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5221–22 (2018), if the defendant committed his offense before Congress enacted the First Step Act, the anti-stacking provision applies to him only "if a sentence for the offense has not been imposed as of [the First Step Act's] date of enactment." *Id.* § 403(b). So the question is, for purposes of § 403(b), has "a sentence" been "imposed" if it is later vacated?

The answer is no. And no amount of textual parsing can change that. To be sure, as a matter of historical fact, when a sentence is vacated, it was imposed at one point before it became void. But in normal parlance, we do not speak of a nullity like a vacated

sentence as though it exists. So a defendant awaiting resentencing after an appellate court vacates his sentence and remands would not say that a sentence has been imposed. Nor would the government. Nor the presiding judge or an interested observer. In that scenario, we would not say a sentence has been imposed any more than we would say a touchdown has been scored if the referee calls it back because of a penalty.[1]

The Majority Opinion disagrees. But the Majority Opinion's analysis assumes the answer, and it cannot hold up to scrutiny. For that reason, I respectfully dissent.

I divide my discussion into two substantive parts. Section I shows why the Majority Opinion's analysis fails. And Section II explains why Section 403(b) does not exclude vacated sentences from the First Step Act's anti-stacking provision's applicability.

## I.

---

[1] The Majority Opinion's efforts to turn this analogy around, *see* Maj. Op. at 12 n.3, just show why the analogy is apt. The Majority Opinion cites sports articles where a commentator momentarily declared a touchdown before the referee called the "touchdown" back. But that's exactly my point: the articles recognize that, no matter what happened before the whistle blew, in the end, there was no touchdown. *See, e.g., id.* (quoting Jason Owens, *Borderline Penalty Wipes out Spectacular Go-Ahead Chiefs TD in Loss to Bills, Leaving Patrick Mahomes Livid*, Yahoo Sports (Dec. 11, 2023), https://perma.cc/F38A-HLRM for the proposition that the "touchdown" lasted "[f]or a moment" "[b]ut a critical penalty wiped it out"). So none of those commentators said that a touchdown was ultimately scored. In other words, everyone understands that "touchdowns" that are called back legally don't count. And that's precisely how we also understand "sentences" that have been vacated: they don't count.

The Majority Opinion says three phrases or words in § 403(b)'s text require the conclusion that § 403(b)'s reference to a sentence that "has been imposed" includes vacated sentences: "a sentence," "has been," and "imposed." It is mistaken. *See* Maj. Op. at 7–13. Below, I explain why. The Majority Opinion has next to no response to my critique of its textual analysis.

## A.

I begin with the Majority Opinion's analysis of "imposed." The Majority Opinion bases its conclusion that "the term 'imposed' in § 403(b) refers to the historical fact of *pronouncement*" on *United States v. Smith*, 967 F.3d 1196 (11th Cir. 2020). *See* Maj. Op. at 10–11. In fact, the Majority Opinion says that "we are bound by our decision in *Smith*" to conclude that § 403(b)'s text refers to the historical fact of imposition. *Id.* at 14. But that's not accurate.

Smith was convicted of four charges of carrying a firearm in relation to three armed robberies and one carjacking. *Smith*, 967 F.3d at 1210. At the time the district court sentenced him, 18 U.S.C. § 924(c) required district courts to stack sentences for the second and later § 924(c) convictions, even if none had become finalized before another conviction. *Id.* Smith appealed on various grounds. *Id.* While his appeal was pending, the First Step Act became effective. *Id.* Smith argued that "[b]ecause his convictions are on direct appeal, . . . they . . . have not been 'imposed' within the meaning of the Act." *Id.* So he sought retroactive application of the First Step Act. *See id.*

We affirmed Smith's conviction and sentence. *See id.* at 1213. At no point was Smith's sentence vacated. And we never considered whether § 403(b)'s reference to a sentence that has been "imposed" includes vacated sentences. *See id.* Rather, we focused narrowly on whether Smith's validly imposed sentence on his valid conviction was "imposed" while his unsuccessful appeal was pending. *Smith* does not control Hernandez's case for three reasons.

First, it is distinguishable. Smith argued that a sentence is not "imposed" until it becomes final—that is, until after any appeals are exhausted and the sentence is not vacated. But a challenged sentence that is not final is not the same thing as a vacated sentence. A challenged sentence remains effective and in force unless and until it is vacated. And a defendant must abide by it. In contrast, as I've noted, the law views a vacated sentence "as if no initial sentencing ever occurred." *Burke*, 863 F.3d at 1359. So upon vacatur, no sentence exists for a defendant to serve. Given these realities, a "reasonable person, conversant with the relevant social and linguistic conventions," Maj. Op. at 7 (citation and quotation marks omitted), would speak of and understand that a valid sentence unsuccessfully appealed—though challenged—remained imposed while the appeal was pending. After all—and contrary to the situation when a sentence has been vacated—the mere act of appealing a sentence does not nullify it.

Second, we have explained that "[t]he holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case." *Chavers v. Sec'y, Fla. Dep't of*

*Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006); *see also Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."). Because *Smith* did not consider whether § 403(b)'s term "imposed" included vacated sentences, it does not govern the answer to that question.

And third, other courts have reached the same conclusion. In *Smith*, we said, "In holding that a sentence is 'imposed' for purposes of § 403(b) when it is pronounced in the district court, we join the other circuits that have decided the issue." *Smith*, 967 F.3d at 1213. We then cited opinions from several other circuits, including the Third and Ninth Circuits. *See id.* (citing *United States v Hodge*, 948 F.3d 160, 163 (3d Cir. 2020); *United States v. Voris*, 964 F.3d 864, 875 (9th Cir. 2020)).

But after those courts issued those opinions, they also weighed in on the question before us today: whether § 403(b)'s term "imposed" includes vacated sentences. And while some circuits have reached the opposite conclusion, both the Third and Ninth Circuits (as well as the Seventh) have held that it does not. *See United States v. Mitchell*, 38 F.4th 382 (3d Cir. 2022) (holding that § 403(b) "allow[s] the [First Step] Act's provisions to apply to a defendant whose pre-Act-unconstitutional sentence is vacated after the Act's enactment"); *United States v. Merrell*, 37 F.4th 571 (9th Cir. 2022) ("[W]e think that the most reasonable reading of § 403(b) is the one adopted by the Seventh Circuit, which is that a 'sentence'

means an *existing valid sentence*, not a *prior invalid one*."). They
could not have done that had their earlier precedents on the issue
*Smith* addressed bound them.

In short, the fact that a sentence was imposed at one point
but is later vacated tells us nothing about whether § 403(b)'s use of
the term "imposed" includes a vacated sentence. And the Majority
Opinion relies on nothing other than *Smith* to argue that it does.

## B.

Next, I turn to the Majority Opinion's discussion of the
phrase "a sentence." The Majority Opinion asserts that "'a' denotes
'any,'" and that therefore "a sentence" includes any sentence, re-
gardless of validity. Maj. Op. at 8. If Congress wanted to limit §
403(b)'s scope to *valid* sentences, so the Majority Opinion's argu-
ment goes, it could have written as much, but Congress "[c]onspic-
uously" did not. *Id.*

I have two text-based responses to that—either of which in-
dependently explains why the Majority Opinion cannot be right.

First, I take no issue with the Majority Opinion's contention
that Congress could have used the term "valid" or some similar
word in § 403(b). But I find it more "conspicuous" that Congress
apparently has not used the phrase "valid sentence" in the entire
United States Code. Yet it's clear that the term "sentence" in the
United States Code refers to a valid and unvacated sentence, unless
otherwise expressly indicated. Put simply, Congress, "conversant
with the relevant social and linguistic conventions," Maj. Op. at 7
(citation and quotation marks omitted), presumes "sentence"

means a valid, unvacated sentence. And since a valid, unvacated sentence is the default, "a sentence" refers to only that. The Majority Opinion has no answer to this problem.

And second, our precedent has construed the term "sentence" not to include a vacated sentence. In *Burke*, we considered the "plain and ordinary meaning" of U.S.S.G. § 4A1.1(a), which instructed courts to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." 863 F.3d at 1358. The Sentencing Guidelines defined the term "prior sentence" to mean "a sentence imposed prior to sentencing on the instant offense." U.S.S.G. § 4A1.2(a) cmt. 1. After the *Burke* defendant's original sentence on the "instant offense" was vacated, he was sentenced separately for different offenses. *See Burke*, 863 F.3d at 1357. So when his resentencing on the "instant offense" occurred, he had new "prior" sentences that the court considered but that could not have been factored into his original sentence because they did not exist at that time. *See id.* at 1357–58. We held that these new sentences were properly considered at the new sentencing on the "instant offense." *Id.* at 1359.

In reaching that conclusion, we explained that "[t]he phrase 'sentencing on the instant offense' refers to the sentencing that occurs after a court vacates an initial sentence because when a court in our Circuit vacates a sentence it 'becomes void in its entirety.'" *Id.* at 1359 (citations omitted). Put simply, we said, "[a]fter vacatur, the original sentencing has 'no validity or effect.'" *Id.* (citation omitted). Not only that, we continued, but "the vacated

sentence—including any enhancements—is wholly nullified and the slate is wiped clean." *Id.* (cleaned up). Indeed, we emphasized, it's "as if no initial sentencing ever occurred." *Id.* In sum, we held that the "plain and ordinary meaning" of the term "sentencing" (and therefore "sentence") does not include a vacated sentence.

And that's exactly the point here. "[A] sentence" does not include within its bounds any vacated sentence because a vacated sentence is a nullity. So the article "a" before "sentence" can't add anything to the meaning of "sentence," which our caselaw establishes doesn't include a vacated sentence.

The Majority Opinion tries to make our reasoning in *Burke* irrelevant, saying that "[t]he panel there didn't purport to define the term 'sentence' for all times and all purposes." Maj. Op. at 8 n.1. The Majority Opinion skirts the point. The point is that the *Burke* panel thought the term "sentencing" carried a "plain and ordinary meaning" based on normal usage of the term "sentencing" in legal text—separate and apart from the rest of its understanding of the guideline it was construing. *See Burke*, 863 F.3d at 1359. Indeed, the *Burke* panel rested its interpretation of the guideline it was considering on its understanding of the "plain and ordinary meaning" of "sentencing." *See id.* And that "plain and ordinary meaning" that the *Burke* panel understood does not include vacated sentences. *See id.*

But the Majority Opinion never explains why our "plain and ordinary meaning" understanding of "sentence" doesn't apply to the First Step Act. Instead, it woodenly parrots *Black's Law*

*Dictionary*'s definition of "sentence" and then assumes that definition includes a vacated sentence, even though we've said that vacated sentences are nullities.

The Majority Opinion never engages with our jurisprudence that vacated sentences are void from the outset and wipe the slate clean.  In fact, the Majority Opinion bases its interpretation of "sentence" on nothing more than its own understanding of *Black's* definition.  Textualism is not so one-dimensional.  Indeed, "[o]rdinary meaning and literal meaning are two different things." *Niz-Chavez v. Garland*, 593 U.S. 155, 181 (2021) (Kavanaugh, J., dissenting).

Nor do the Majority Opinion's efforts to bolster its definition of "sentence" by pointing to "the juxtaposition of the term 'sentence' alongside the phrase 'has not been' and the term 'imposed'" fare any better.  As this dissent explains, if a vacated sentence is void from the outset so that it is neither a "sentence," *see supra* at Section I.A., nor "imposed," *see supra* at Section I.B., (or even just one of the two) as we understand those terms, then the Majority Opinion's analysis caves in on itself, *see supra* at Section I.C.  And "the juxtaposition of [nothing] alongside [nothing] and [nothing]" is nothing.

## C.

As for the phrase "has been," it adds nothing to the Majority Opinion's analysis.  If "imposed" doesn't include vacated sentences, or if "a sentence" doesn't include a vacated sentence—and for the reasons I've explained, they don't—then necessarily a sentence "has [not] been" imposed if the sentence was vacated.  Thus, the

Majority Opinion's textual analysis is a house of cards that falls in on itself if either the premise that "imposed" includes vacated sentences or the premise that "a sentence" includes vacated sentences is wrong.

## II.

So what do "imposed" and "sentence" mean in § 403(b)? Whatever they mean, the Majority Opinion has failed to show that the better *textual* interpretation includes vacated sentences. I've also been unable to establish the Majority Opinion's premise. And the Majority Opinion does not even try to explain why my critique of its textual analysis is wrong (other than its half-hearted effort to distinguish *Burke*). That leaves us with two other possibilities: the better textual interpretation does not include vacated sentences, or the text is ambiguous. Either way, ultimately, we must conclude that § 403(b)'s reference to "imposed" does not include a vacated sentence for at least three reasons.

*First*, as Judge Bibas explains in *United States v. Mitchell*, "[h]istorical treatment, modern precedent, and a narrow immigration exception reveal" that the law does not "treat[]" a sentence as imposed if it is vacated. 38 F.4th 382, 392 (7th Cir. 2022) (Bibas, J., concurring in the judgment). "Nineteenth- and early twentieth-century courts uniformly understood that, under the law, a vacated order never happened." *Id.* (collecting cases). And modern precedent "agree[s]" that "'the general rule [is] that when a court vacates an order . . . , the legal status is the same as if the order never existed.'" *Id.* at 393 (citation omitted) (alteration in original). Indeed,

that's what Eleventh Circuit precedent holds.  *See Burke*, 863 F.3d at 1359.  As for the immigration exception, it allows courts to consider vacated convictions when deciding whether a criminal conviction makes an alien inadmissible—but only if the conviction is not vacated because it is legally defective.  *Mitchell*, 38 F.4th at 393.  Put another way, even in the immigration context, the law treats convictions and sentences that have been vacated because they are legally defective as "void from the start."  *Id.*

The Majority Opinion tries to overcome these reasons, asserting that "'background principles,' no matter how well established, can't control or contradict clear statutory text."  Maj. Op. at 15.  That is true.  But the Majority Opinion has failed to show that the text clearly counts a vacated sentence as "a sentence" that "has been imposed."  So the maxim the Majority Opinion invokes has no place in our analysis.

The Majority Opinion's contention that there's no "universal 'background principle' that vacatur necessarily 'wipe[s] the slate clean,'" *id.*, fares no better.  To support this notion, the Majority Opinion refers to 18 U.S.C. § 3742(g)(1), which textually requires a court resentencing a defendant after vacatur of his original sentence and a remand to use the Sentencing Guidelines in effect on the date of the vacated sentence.  *See id.*

But the existence of that statutory text, in fact, proves the opposite of the Majority Opinion's argument.  Congress knows the law treats vacated sentences "as null and void."  *Merrell*, 37 F.4th at 576.  So it would not be necessary for Congress to expressly state

that the Guidelines in effect at the time of the vacated sentence control the resentencing if the general background principle were not that vacated sentences are void from the start. That Congress did explicitly make the Guidelines in effect at the time of the vacated sentence govern the resentencing shows that Congress knows how to exempt a provision from the usual background principles if it wants to. But Congress did not do that here.

In fact, as I've noted, *see supra* Section I.B., Congress speaks of vacated or invalid sentences only to distinguish them from the default—valid sentences. In other words, the "social and linguistic conventions" that inform a "reasonable person['s]" reading of § 403(b) require the conclusion that Congress's decision not to cordon off vacated sentences does not imply that they are included with the rest.

As for the Majority Opinion's reliance on *United States v. Cabrera*, 786 F.2d 1097 (11th Cir. 1986) (per curiam), that also fails. In *Cabrera*, Cabrera was convicted in state court of felony cocaine possession. *Id.* at 1097. Upon his guilty plea, the trial court entered an order "withholding adjudication," a disposition that counted as a conviction under 18 U.S.C. § 922. *Id.* After his conviction, Cabrera bought a gun and was indicted for being a felon in possession of a firearm. *Id.* But while that charge was pending, the state court vacated the cocaine conviction. *Id.* Cabrera argued that his felon-in-possession charge was invalid because the cocaine conviction was ultimately vacated. *See id.* at 1098. We disagreed and upheld the conviction. As we recognized, the vacatur was

"immaterial since the state court conviction, and the order with-holding adjudication, were in effect when Cabrera purchased the gun." *Id.*

*Cabrera* is not instructive here. As our reasoning there shows, § 922(g)(1)'s whole point is to prohibit firearm possession by people whose factual status at the time of possession is that of a felon. So the nature and logic of the crime turn on a defendant's factual status at the time of possession. Thus, § 922(g)(1) necessarily treats vacated felony convictions like valid ones if the vacated conviction had not yet been vacated at the time of possession. But nothing in § 403(b) logically or otherwise requires the same of vacated sentences.

The Majority Opinion also complains that reading § 403(b)'s reference to "imposed" to exclude vacated sentences creates a "moving" target, "always capable of evanescing." Maj. Op. at 10. But my interpretation does not change the question that a court must ask when deciding whether the benefits of the First Step Act apply at a resentencing. The question remains: did the defendant have a sentence imposed as of the date of enactment? Vacatur simply informs the court's answer. If any relevant sentences have since been vacated, the answer is clearly no. After all, once a sentence is vacated, it is "as if no initial sentencing ever occurred." *See Burke*, 863 F.3d at 1359.

*Second*, given that the statutory text is not unambiguous—at least not in the way the Majority Opinion contends—we must use the other tools in our statutory-interpretation toolbox. That

14                    ROSENBAUM, J., Dissenting                    22-13311

means we must "interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, . . . purpose' . . . . [and] not to mention common sense." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (citation omitted).

The statutory text of the Act makes its "ameliorative," *United States v. Uriarte*, 975 F.3d 596, 603 (7th Cir. 2020) (en banc), purpose "obvious: to reduce the harsh length of sentences for certain crimes," *Mitchell*, 38 F.4th at 387. Indeed, that's exactly what § 403(a) did: it reduced the mandatory minimum sentence for certain firearms offenses. *Mitchell*, 38 F.4th at 387; *see also* § 403(a). And it did so in a way that showed that Congress was concerned about fairness when it enacted the First Step Act. For instance, before enactment of the First Step Act, a first-time offender could receive enhanced penalties, depending on how the government chose to charge a case. But after the First Step Act, a first-time offender cannot receive an enhanced penalty under affected criminal provisions. Rather, only those with prior convictions can receive an enhancement, no matter how the government elects to charge a case.[2]

---

[2] As an aside that I don't rely on in discerning the First Step Act's purpose, I note that the Fourth Circuit has observed that, within two years of voting for the First Act, Senators Richard Durbin, Charles Grassley, and Cory Booker—the First Step Act's "lead sponsors"—in an amici curiae brief they filed in the Ninth Circuit in a similar case about § 401 of the same Act, expressed the bipartisan consensus that those whose sentences are vacated after the First Step Act's effective date can reap the benefits of the Act. *United States v. Bethea*, 841 F. App'x 544, 551 n.9 (4th Cir. 2021); Br. Amici Curiae in Support of Def.-Appellant and Vacatur at 1–2, *United States v. Mapuatuli*, No. 19-10233 (9th Cir.

Construing the First Step Act to apply to post-enactment sentencings occurring after a pre-enactment sentence was vacated furthers that fairness purpose. Agree with it or not, Congress's solution in § 403(b) makes perfect—common—sense. Congress didn't want to burden the courts with resentencing everyone who had ever been sentenced under § 924(c)—but if a court had to sentence someone, anyway, after § 403(b)'s enactment—whether for the first time or because an earlier sentence was vacated—in the interest of fairness, Congress wanted all of them to enjoy the same benefit of the anti-stacking provision. That choice guaranteed uniformity in sentencings that followed the First Step Act's effective date without wreaking resentencing or finality havoc.[3] In contrast, the Majority Opinion identifies no reason Congress would have decided to allow invalid sentences to constrain its sentencing reforms.

Instead, the Majority Opinion responds by invoking our maxim that "'[e]levating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written.'" *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc). And so it is. But once again, the text does not "plain[ly] mean" that § 403(a) is inapplicable

---

May 12, 2020). Their brief said, "The question before this Court is whether Section 401 applies where a prior sentence has been vacated and the case remanded for plenary resentencing. The answer, unequivocally, is yes."

[3] This approach is also easier to administer: courts simply apply the Act at all sentencings occurring after the Act's enactment, rather than having to ascertain the date of the original sentencing and determine whether it occurred before or after the Act's enactment.

when a sentence has been vacated.  And here, the purpose of the First Step Act informs the meaning of § 403(b).

*Third*, even if the Court does not wish to rely on purpose— though Supreme Court precedent still counts it as a tool within the statutory-interpretation toolbox, *see, e.g., Wooden v. United States*, 595 U.S. 360, 371–75 (2022) (invoking "[s]tatutory history and purpose" in its analysis)—the last resort is the rule of lenity.  The rule of lenity provides that "when choice has to be made between two readings of what . . . Congress has made a [punishment], it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."  *United States v. Bass*, 404 U.S. 336, 347 (1971); *see also United States v. R.L.C.*, 503 U.S. 291, 305–06 (1992) (noting the applicability of the rule of lenity to statutory punishments).  That rule is "reserved . . . for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute."  *R.L.C.*, 503 U.S. at 305–06.

So if the Court does not agree with me that background principles (and if not that, those principles, along with purpose) unambiguously resolve the question before us to allow those with vacated sentences to reap the benefits of the First Step Act, then it must apply the rule of lenity.  That's so because, in that case, Congress has not spoken clearly of an intent to except vacated sentences from § 403(a)'s reach.  And Hernandez's proposed

construction of § 403(b) is at least equally as plausible as the Majority Opinion's.

### III.

When we interpret a statute, we "ought not deprive it of the obvious meaning intended by Congress, nor abandon common sense." *Uriarte*, 975 F.3d at 603; *Oak Grove Res., LLC v. Dir.*, 920 F.3d 1283, 1290 (11th Cir. 2019) ("[A]s the Supreme Court has emphasized, '[w]e need not leave our common sense at the doorstep when we interpret a statute.'"). Congress determined that a person without a prior conviction before later violation of § 924(c) was not a "true" repeat offender under the First Step Act. It also determined that going forward, from the date of the First Step Act's enactment, no one who was not a "true" repeat offender should be sentenced as one. In other words, § 403(a)'s non-stacking rule should be applied at all sentencings that occur after enactment of the First Step Act—regardless of whether those are initial sentencings or resentencings because a pre-Act sentencing was vacated. Any other reading abandons the Act's text, purpose, and common sense. So I would vacate Hernandez's sentence and remand for a full resentencing. Because the Majority Opinion has not done so, I respectfully dissent.